# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# VALDOSTA DIVISION

| | | |
|---|---|---|
| **MARK HASTY and** | : | |
| **BIOTRONIK, INC.,** | : | |
| | : | |
| Plaintiffs, | : | |
| | : | Civil Action No. 7:06-cv-102(HL) |
| v. | : | |
| | : | |
| **ST. JUDE MEDICAL S.C. INC.,** | : | |
| | : | |
| Defendant. | : | |

## ORDER

Before the Court is Defendant's Motion to Dismiss, Stay, or Transfer (Doc. 7) in which Defendant asks the Court to dismiss the case outright, stay the case pending resolution of a related action filed in Minnesota, or transfer the case to the United States District Court for the District of Minnesota. For the reasons explained herein, Defendant's Motion to Dismiss, Stay, or Transfer is granted, and the case is hereby transferred to the United States District Court for the District of Minnesota.

## I. FACTS

Plaintiff Mark Hasty ("Hasty") entered into an employment agreement with Defendant St. Jude Medical S.C. Inc. ("St. Jude") on January 25, 1999, under which Hasty sold cardiac care devices for one of Defendant's divisions in Georgia. The agreement includes the following language:

7.1 For a period of one year (which I agree is a reasonable period of time) after my employment ends for any reason, I will not in any direct or indirect way, for myself or on behalf of or along with any third party, do any of the following in the Territory:

7.2 Directly or indirectly compete with you or your affiliates;

7.3 Sell, demonstrate, promote, solicit or support the sale of, support or supervise the implantation or other use of, or otherwise have any involvement with, the sale, delivery, manufacture, research, development, design, marketing, monitoring, tracking, or any other business aspect of any Competitive Product.

7.4 Induce, attempt to induce, entice, or hire, or attempt to hire or employ any of your or your Affiliate's employees or representatives;

7.5 Solicit any Customers for the Products and Services that you provide to purchase any Competitive Products, or sell any Competitive Products to any Customers.

7.6 My promises in this Section 7 are of the essence of this agreement, and they will be construed as independent of any other parts of this agreement. Any claims or causes of action I may have against you, even if they arise under this agreement, will not be a defense to your enforcement of this Section 7.

(Employment Agreement 3.) The agreement also contains the following choice-of-law clause and forum selection clause:

15.1 This Agreement will be interpreted under the laws of the State of Minnesota without regard to the principles of conflict of laws.

15.2 You and I agree that all actions or proceeding relating to or arising from this Agreement will be tried and litigated only in the Minnesota State or Federal Courts located in Ramsey County, Minnesota. I submit to the exclusive jurisdiction of these courts for the purpose of any such action or proceeding, and this submission can not be revoked. I

> understand that I am surrendering and expressly waiving the right to bring litigation against you outside the State of Minnesota.

(Employment Agreement 6.) In February of 2006, Hasty terminated his employment with Defendant and began working for Plaintiff Biotronik, Inc. ("Biotronik"), a St. Jude competitor.

On October 11, 2006, Plaintiffs filed this lawsuit asking the Court to declare the restrictive covenants, choice of law clause, and the forum selection clause illegal, invalid, void, and unenforceable. Defendant St. Jude subsequently filed the Motion to Dismiss, Stay, or Transfer that is before the Court in an effort to enforce the employment agreement's forum selection clause. Plaintiffs oppose the Motion, arguing that the claims in the case bear no relationship to Minnesota and that the forum selection clause should not be enforced because Minnesota courts will fail to recognize Georgia's strong public policy against restrictive covenants in employment agreements.

## II. DISCUSSION

### A. Dismiss, Stay, or Transfer?

The Court must first determine the proper procedural vehicle to be used in considering the forum selection clause in this case. Although Defendant's Motion is styled as a Motion to Dismiss, Stay, or Transfer, Defendant originally focused its entire argument on having the case transferred to Minnesota pursuant to the forum selection clause in the employment contract. Only after Plaintiffs responded to Defendant's

3

original argument, did Defendant affirmatively argue that the case should be dismissed rather than transferred. Furthermore, Defendant has offered no argument or authority for staying the case pending resolution of a related case currently before a Minnesota court.

Federal Rule of Civil Procedure 12(b)(3) authorizes outright dismissal due to improper venue, and the Eleventh Circuit has dismissed cases under Rule 12(b)(3) pursuant to a valid forum selection clause. See Lipcon v. Underwriters at Lloyd's, London, 148 F.3d 1285, 1290 (11th Cir. 1998). However, courts only chose to dismiss cases under Rule 12(b)(3), as opposed to transferring cases pursuant to 28 U.S.C. § 1404, when the applicable forum selection clause requires litigation in a state court system or in a foreign country. Id. at 1290 n.3. The cases cited by Defendant on this issue are distinguishable as all involved a forum selection clause that required litigation either in a foreign country or state court system. See Manetti-Farrow, Inc. v. Gucci America, Inc., 858 F.2d 509, 511 (9th Cir. 1988) (forum selection clause provided the Court of Florence Italy with exclusive jurisdiction); Jones v. Weibrecht, 901 F.2d 17, 18 (2d Cir. 1990) (forum selection clause set the Supreme Court of New York, Essex County as the exclusive venue); International Software Systems, Inc. v. Amplicon, Inc., 77 F.3d 112, 115 (5th Cir. 1996) (forum selection clause limited venue to state court). In cases where a forum selection clause simply requires litigation in another federal district, courts in the Eleventh Circuit have uniformly recognized that transfer under

28 U.S.C.A. § 1404 is more appropriate than dismissing the case due to improper venue. See, e.g., Thomas v. Rehab. Servs. of Columbus, Inc., 45 F. Supp. 2d 1375, 1378 (M.D. Ga. 1999); Digital Envoy, Inc. v. Google, Inc., 319 F. Supp. 2d 1377, 1379 (N.D. Ga. 2004).

Furthermore, transfer, rather than dismissal, is more appropriate if it is in the interest of justice to do so. See 28 U.S.C.A. § 1406(a) (2006) ("The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice transfer such case to any district of division in which it could have been brought.") The purpose of this provision is to remove "obstacles [that] may impede an expeditious and orderly adjudication of cases and controversies on their merits." Goldlawr, Inc. v. Heiman, 369 U.S. 463, 466-67, 82 S. Ct. 913, 916 (1962). Courts have utilized this provision to transfer, rather than dismiss, when it would be more efficient and economical to transfer, see Giroir v. Mbank Dallas, N.A., 676 F. Supp. 915, 923 (D.C. Ark. 1987) or where the plaintiff has asserted venue in good faith. See United Financial Mortgage Corp. v. Bayshores Funding Corp., 245 F. Supp. 2d 884, 896 (D.C. Ill. 2002).

Here, the forum selection clause states that disputes arising from the agreement "will be tried and litigated only in the Minnesota State or Federal Courts located in Ramsey County, Minnesota." (Employment Agreement 6.) Thus, according to the forum selection clause, venue is not limited to a state court system or the court system

5

of a foreign country. In addition, it appears that transferring the case would be more efficient and that Plaintiffs asserted venue in the Middle District of Georgia in good faith. Therefore, the Court determines that dismissing the case at this juncture would be a waste of judicial economy should the Court find the forum selection clause enforceable. Accordingly, the Court will review this matter under the rubric set forth in 28 U.S.C. § 1404.

**B. Motion to Transfer Venue**

A district court may transfer an action to any other district "where it might have been brought" if the "convenience of [the] parties and witnesses [and] the interest of justice" warrant such a transfer. 28 U.S.C.A. §1404(a) (West 2006). The threshold question in determining if a change of venue is warranted, is whether the suggested forum is one in which the case could have been properly brought originally. If the suggested forum is one in which the case could have been brought, courts then undertake "an individualized case-by-case consideration of convenience and fairness." Van Dusen v. Barrack, 376 U.S. 612, 622, 84 S. Ct. 805, 812 (1964).

1. Proper Jurisdiction and Venue

Before the convenience factors can be analyzed, a Court must determine whether the proposed district is one in which the claim could have been brought originally. The United States Supreme Court has interpreted this requirement to mean that (1) the

suggested court must have proper subject matter jurisdiction, (2) the suggested court must be able to exercise personal jurisdiction over all defendants, and (3) venue must be proper in the suggested forum. Hoffman v. Blaski, 363 U.S. 353, 344, 80 S. Ct. 1084, 1090 (1960).

In this case, the District of Minnesota is a forum in which the current claim could have been brought originally. According to the Complaint, Plaintiff Hasty is a citizen of the State of Georgia; Plaintiff Biotronik, Inc., is a corporation organized under the laws of the State of Oregon with its principal place of business located in Lake Oswego, Oregon, thus making it a citizen of the State of Oregon; and Defendant St. Jude is a corporation organized under the laws of the State of Minnesota with its principal place of business located in St. Paul, Minnesota, thus making it a citizen of the State of Minnesota. Therefore, the parties are diverse. In addition, the amount in controversy exceeds seventy-five thousand dollars. Accordingly, federal subject matter jurisdiction, specifically based on diversity of citizenship, is proper in this case.

Next, because the Defendant has significant ties to the proposed forum, including being a resident thereof, the proposed forum is able to exercise personal jurisdiction over Defendant. Finally, pursuant to 28 U.S.C § 1391(a)(1), venue is proper in the proposed forum because Defendant resides in the proposed forum. Therefore, as the suggested court has proper subject matter jurisdiction over the case, can exercise personal jurisdiction over Defendant and is a proper venue, the United States District

Court for the District of Minnesota is a forum in which the claim could have been brought originally.

2. Convenience and Fairness

Courts consider three main factors in determining whether a proposed district will be more convenient than the current district: the convenience of the parties, the convenience of the witnesses, and the interests of justice. See 28 U.S.C.A. § 1404 (West 2006). In addition to these three factors, courts also consider additional factors relevant to the determination. These additional factors include the following:(1) the plaintiff's original choice of forum; (2) where the majority of the events at issue in the case took place; (3) the ability to compel the attendance of unwilling witnesses in the suggested forum; (4) the location of the physical evidence; (5) relative means of the parties to litigate outside their home jurisdiction; (6) the familiarity of the courts with the applicable law; and (7) the existence of a valid forum selection clause.[1] 17 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 111.13[1][b] (3d ed. 2005). Generally, unless the plaintiff resides outside the chosen forum or the operative events occurred outside the forum, courts will accord great deference to the plaintiff's choice of forum. Peteet v. Dow Chem. Co., 868 F.2d 1428, 1436 (5th Cir. 1989). However,

---

[1] Other factors, which are not particularly relevant in this case, are also considered: (1) relative court congestion in both the present and proposed districts; and (2) the enforceability of the judgment.

a valid forum selection clause is "a significant factor that figures centrally in the district court's calculus," Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29, 108 S. Ct. 2239, 2244 (1988), and will rarely be outweighed by other § 1404(a) factors because it is, in effect, the intent of both parties to proceed in the selected forum. In re Ricoh Corp., 870 F.2d 570, 573 (11th Cir. 1989). Accordingly, the Court will first consider the enforcability of the forum selection clause before considering the relevant § 1404(a) factors.

As an initial matter, the Court notes that there is no forum selection between Defendant St. Jude and Plaintiff Biotronik. Nevertheless, because severing the Plaintiffs into separate actions would not be in the interest of justice of judicial economy, the Court finds no injustice in requiring Plaintiff Biotronik to abide by the forum selection clause. After all, Plaintiff Biotronik was not only willing to hire a salesperson that it knew was subject to a restrictive covenant, but was also willing to bring a lawsuit against Plaintiff Hasty's previous employer to have the restrictive covenants in the employment agreement invalidated.

*i. Forum Selection Clause*

Forum selection clauses that are "freely and fairly negotiated by experienced business professionals" are enforceable. In re Richo Corp., 870 F.2d at 573-74. To assert unfair negotiation, parties must show a "disparity in bargaining power such that it would be unjust or unreasonable to enforce the forum selection clause." McNair v.

9

Monsanto Co., 279 F. Supp. 2d 1290, 1302 (M.D. Ga. 2003). Such disparity does not generally exist where the parties are free to refuse to enter into the agreement, Id. , or when an employee signs an agreement in which each term is not negotiated. Goodman v. Hill-Rom Co., Inc., 1996 WL 685840 *3 (M.D. Fla.1996). In addition, proof of "fraud, duress, misrepresentation, or other misconduct" in negotiation can bar a forum selection clause's enforcement. In re Richo Corp., 870 F.2d at 573-74.

Furthermore, in the event something unexpected occurs between the contract's formation and the filing of the lawsuit challenging the contract, a forum selection clause may be deemed unenforceable if enforcing the clause would, as a result of the unexpected occurrence, frustrate the purpose of the underlying contract. Id. In limited circumstances, forum selection clauses can also be held unenforceable "if enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision." The Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 15, 92 S. Ct. 1907, 1916 (1972).

Here, Plaintiffs do not assert unfair negotiation or contend that any fraud, duress, or misrepresentation occurred during the agreement's formation. Plaintiffs also do not claim any "intervening or unexpected occurrences" such that the purpose of the contract would be frustrated if the forum selection clause were now enforced. Instead, Plaintiffs argue the forum selection clause is unenforceable because it contravenes a

strong public policy of the forum in with the suit was brought.

As explained by Plaintiffs, Georgia's public policy disfavoring non-compete agreements is well-established and so strong that "Georgia choice-of-law rules frequently require Georgia courts to apply Georgia law to [non-compete agreements], even if contractual choice-of-law clauses incorporate the laws of another state." Jenkins Brick Co. v. Bremer, 321 F.3d 1366, 1370 n.2 (11th Cir. 2003). Plaintiffs argue that "enforcing the forum selection clause is equivalent to enforcing the choice-of-law clause because "the Minnesota court will undoubtedly enforce the choice-of-law provision in the Employment Agreements and apply Minnesota law to the dispute" if the case is transferred. (Pls.' Opp'n to Def.'s Mot. 11.) This is, according to Plaintiffs, "contrary to well-established Georgia law providing that choice-of-law clauses in employment agreements will not be enforced when doing so would subject an employee to law that is less favorable than the law of Georgia and thereby violate Georgia public policy." (Pls.' Opp'n to Def.'s Mot. 11.)

First, Plaintiffs have failed to show that the application of Minnesota law will result in a less favorable result than the application of Georgia law. While Georgia does have a strongly-held public policy against unreasonable restrictive covenants in employment contracts, Keener v. Convergys Corp., 342 F.3d 1264, 1268 (11th Cir. 2003), and Minnesota law does not appear to share this broad public policy, Minnesota

11

law does not blindly uphold all restrictive covenants. See Hilligoss v. Cargill, Inc., 649 N.W.2d 142, 147 n.8 (Minn. 2002). Minnesota courts do scrutinize restrictive covenants for reasonableness. Id. Plaintiffs point out that Minnesota, unlike Georgia, has adopted the "blue pencil" doctrine, which allows a court to find that a portion of a restrictive covenant is unreasonable, sever the offending section, and enforce the remaining provisions of the covenant. Id. In contrast, under Georgia law, the entire restrictive covenant is considered unenforceable if any part of the covenant is unreasonable. Keener, 342 f.3d at 1268. While this distinction could possibly result in less favorable results in certain cases, Plaintiffs have failed to show that this distinction would be relevant in this case.

Second, even assuming the application of Minnesota law will result in a less favorable result, Plaintiffs have failed to show that a Minnesota court will apply Minnesota law, rather than Georgia law, to this dispute. Under Minnesota law, a choice-of-law analysis is triggered if the choice of one state's law over another determines the outcome of the case. Myers v. Government Emp. Ins. Co., 225 N.W.2d 238, 241 (Minn. 1974). Therefore, should the application of Minnesota law result in a less favorable result than the application of Georgia law, as Plaintiffs suggest, a choice-of-law analysis would likely be triggered.

Minnesota's choice-of- law analysis entails an individualized, five-factor

examination into which law should apply. Jepson v. Gen. Cas. Co. of Wis., 513 N.W.2d 467, 469-70 (Minn. 1994). The following factors are considered: "(1) predictability of the result; (2) maintenance of interstate . . . order; (3) simplification of judicial task; (4) advancement of the forum's governmental interest; and (5) application of the better rule of law." Id. at 470. In addition, the Supreme Court of Minnesota discourages importing wholesale, the choice-of-law analysis contained in similar cases, but rather, requires courts to consider each case anew to find the reasons for choosing to apply one state law over another. Id. Moreover, Minnesota courts have recently applied the another state's law because applying Minnesota own law would disrespect the public policy of that state. See, e.g., Schumaker v. Schumaker, 676 N.W.2d 685, 691 (Min. App. 2004) (applying Iowa law to a dispute, in part because Iowa had a strong public policy and applying Minnesota law would be disrespectful to Iowa law). Rather than applying Minnesota's choice-of-law analysis to the present case, Plaintiffs blindly assert that a Minnesota court will undoubtedly apply Minnesota law. Given Minnesota's extensive choice-of-law analysis and Minnesota's willingness to apply other states' law, Plaintiffs' assertion is nothing more than unsupported speculation.

Third, the Georgia Court of Appeals made clear, in Iero v. Mohawk Finishing Prods., Inc., 534 S.E.2d 136 (Ga. App. 2000), that the enforcement of a forum selection clause, even if contained within an employment contract that included a non-compete

agreement, did not run afoul of Georgia public policy. Id. at 138. In Iero, an employee argued that the forum selection clause in his employment contract should not be enforced because the employment contract also contained a non-compete agreement. Like Plaintiffs in this action, the employee in Iero argued that enforcing the forum selection clause would be tantamount to enforcing the non-compete agreement, which would in turn violate Georgia public policy. Id. at 137. The Iero court rejected the employee's argument and held that the so called public policy exception "does not allow parties who agree to litigate in a specified forum to circumvent their contractual obligations simply because they do not like the laws of the chosen forum." Id. at 138.

Having determined that the forum selection clause in the employment agreement is valid and enforceable, the burden shifts to Plaintiffs, as the opposing party, "to show that the contractual forum is sufficiently inconvenient to justify retention of the dispute." P&S Business Machines, Inc., 331 F.3d at 807.

*ii. Convenience of the Parties*

Plaintiff Hasty asserts he owns no property in Minnesota and has never visited the state in his lifetime. Plaintiff Biotronik admits it is headquartered in Oregon, but asserts it employs sales representatives in Georgia. Although Plaintiffs recognize Defendant's headquarters is located in Minnesota, they point out that Defendant does maintain an office in Georgia. Defendant fails to respond to the issue.

*iii. Convenience of the Witnesses*

Plaintiffs argue that as the dispute centers around the employment agreement between Plaintiff Hasty and Defendant, that the majority of relevant witnesses are located in Georgia. In fact, Plaintiffs argue that no potentially relevant witnesses reside in the state of Minnesota. Defendant does not address the issue.

*iv. The location where the majority of events occurred*

According to Plaintiffs, the employment agreement at the center of this case was executed, performed, and terminated in Georgia. Therefore, all operative facts relevant to this case occurred in Georgia, not Minnesota. Again, Defendant fails to address the issue.

*v. The availability of the forum to compel the attendance of unwilling witnesses*

As all relevant witnesses reside in the state of Georgia, Plaintiffs assert that transferring this case to Minnesota would likely result in the inability to compel many relevant witnesses to testify. Defendant again fails to address the issue.

*vi. The location of physical evidence*

Plaintiffs also argue that the majority of the relevant documents and other sources of proof are located in or accessible from Georgia. Plaintiffs admit that Plaintiff Hasty's payroll records may be stored in Minnesota, but assert the records have little to do with the central issues in this case. Again, Defendant does not address the issue.

*vii. The relative means of the parties*

Although Plaintiff Hasty is a successful sale representative and Plaintiff Biotronik is a successful medical device company, Plaintiffs argue their collective means pale in comparison to those of a multi-billion dollar corporation like Defendant. Again, Defendant does not address the issue.

*viii. The familiarity of the courts with the applicable law*

Plaintiffs argue the case is governed by Georgia law, and thus a Georgia court is more familiar with the governing law than a court in Minnesota. Defendant does not address the issue.

### III. CONCLUSION

While the other convenience factors do show that a Georgia forum would be slightly more convenient for Plaintiffs than a Minnesota forum, the factors do not show that the contractual forum is sufficiently inconvenient to justify ignoring the plain language of the employment agreement in which Plaintiff Hasty expressly agreed to litigate this dispute in a Minnesota court. Accordingly, Defendant's Motion to Transfer is Granted, and Defendant's Motion to Dismiss is Denied. The proper venue is the District Court for the District of Minnesota.

**SO ORDERED**, this the 11th day of May, 2007.

/s/ Hugh Lawson
**HUGH LAWSON, Judge**

eab/scs